**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffery Pimsner,<br><br>                Plaintiff,<br>vs.<br><br>Greystar Management Services, LLC,<br><br>                Defendant. | No. CV-24-02359-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Greystar Management Services, LLC's ("Greystar's") Motion to Dismiss and Compel Arbitration (Doc. 7), Plaintiff's Response in Opposition (Doc. 16), and Defendant's Reply (Doc. 17). For the following reasons, Defendant's Motion to Dismiss shall be granted.

**I.    BACKGROUND**

Defendant Greystar is a real estate company. (Doc. 7 at 5). Greystar hired the plaintiff, Jeffery Pimsner ("Plaintiff"), in December 2022. (*Id.*). On August 2, 2024, Plaintiff filed a complaint in the Maricopa County Superior Court asserting claims of harassment, retaliation, and wrongful termination in violation of the Fair Labor Standards Act ("FLSA") and possibly Title VII of the Civil Rights Act of 1964. (*Id.* at 2; Doc. 1 at 3). On September 6, 2024, Defendant filed its Notice of Removal in this Court based on federal question jurisdiction. (Doc. 1 at 3). Although Plaintiff filed a "First Amended Complaint" in this Court on September 23, 2024 (Doc. 11), both parties agreed that the Amended Complaint "asserts essentially the same claims that were asserted in the original

complaint" and therefore fails to cure the defects alleged in Greystar's Motion to Dismiss. (Doc. 15 at 1). Plaintiff alleges that he "has endured a range of unethical and illegal behaviors, from racial slurs and age discrimination to being unjustly denied access to essential work tools and training opportunities." (Doc. 11 at 5).

When Greystar first hired Plaintiff, Plaintiff was required to sign, and did electronically sign, a "Mutual Agreement to Arbitrate Claims" (*Id.* at 1–2; Doc. 7-1). The agreement states in pertinent part:

> [B]oth you and [Greystar] agree to arbitrate any and all disputes, claims, or controversies . . . that you may have against [Greystar] . . . including, but not limited to, all claims arising out of or relating to your employment . . . and/or the end of your employment. This Agreement includes, but is not limited to, claims under . . . Title VII of the Civil Rights Act of 1964; . . . the Fair Labor Standards Act of 1938; . . . harassment of any kind, and/or retaliation . . . .

(Doc. 7-1 at 2–3).

Plaintiff contends that this arbitration agreement "is unenforceable under Arizona law" (Doc. 16 at 1) and seeks denial of the Motion to Compel Arbitration (*Id.* at 4), whereas Greystar seeks to enforce it (Doc. 17 at 8).

## II.   LEGAL STANDARD

"The standard the court applies in making the arbitrability determination is similar to the summary judgment standard, and the court should review the record to determine if the party opposing arbitration has raised any triable issue of fact." *The O.N. Equity Sales Co. v. Thiers*, 590 F. Supp. 2d 1208, 1211 (D. Ariz. 2008). "The court does not require an evidentiary hearing when the underlying factual circumstances which are relevant to the court's determination of arbitrability are undisputed." (*Id.*). "An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

///

## III. ANALYSIS

In determining whether a motion to compel arbitration should be granted, the Court generally "ask[s] only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004); *Martin v. TEKsystems Mgmt. Inc. (Fn)*, 2021 WL 2334389, at *1 (D. Ariz. June 8, 2021). Here, Plaintiff does not dispute that he entered into an arbitration agreement with Greystar, nor that his asserted claims fall within the arbitration clause (*see generally* Doc. 16); the only issue is whether the agreement is valid.

### A. Enforceability of Arbitration Agreement

"The Court's initial task is to determine whether a valid arbitration agreement exists between the parties. Ordinary contract law principles guide this inquiry." *Myers v. Racerworld LLC*, 2022 WL 1569080, at *3 (D. Ariz., May 18, 2022). Here, Plaintiff argues that the arbitration agreement is unenforceable for four primary reasons: (1) the Arizona Arbitration Act excludes all arbitration agreements between employers and employees, "thus providing a key legal basis for challenging the enforceability of the arbitration agreement in this context" (Doc. 16 at 1); (2) Arizona public policy "favors transparent judicial processes for adjudicating statutory rights and protections against discrimination and retaliation" over arbitration (*Id.* at 2); (3) the agreement is both procedurally and substantively unconscionable (*Id.*); and (4) the Federal Arbitration Act ("FAA") does not preempt state law in this case "unless the agreement is part of a transaction involving interstate commerce, which requires further examination in this case" (*Id.* at 3).

#### 1. Federal Preemption

Plaintiff first argues that the arbitration agreement is unenforceable under Arizona statutory and case law, citing to a provision of the Arizona Revised Uniform Arbitration Act (the "RUAA"), A.R.S. § 12-1517, and the Arizona Supreme Court's decision in *North Valley Emergency Specialists, L.L.C. v. Santana*, 93 P.3d 501 (Ariz. 2004), which held that arbitration agreements between employers and employees are exempt from the RUAA. (Doc. 16 at 1–2). The RUAA "differs from the FAA which, aside from a few narrow

exceptions, applies to arbitration agreements in employment contracts." *Myers*, 2022 WL 1569080, at *5. Plaintiff therefore seems to be asking the Court to apply Arizona state law, rather than the FAA, to find that the arbitration agreement in question here is unenforceable.

The *Santana* court declined to address whether the FAA preempts Arizona law, because in that case, the party seeking to enforce the arbitration agreement waived any preemption argument under the FAA. *Santana*, 93 P.3d at 503 n.3. Greystar argues that in the present case, "waiver is not an issue because Greystar properly raised the preemption argument in its Motion." (Doc. 17 at 3). Furthermore, Greystar argues that the FAA is clearly applicable to the instant case because "[t]he FAA mandates enforcement of arbitration agreements where such agreements: 1) are a part of a contract or transaction involving commerce; and 2) are valid under general principles of contract law." (*Id.*). This Court agrees, but it needn't analyze the contours of FAA preemption too deeply—ultimately, the RUAA is irrelevant here, because the arbitration agreement between Plaintiff and Greystar explicitly states that it "is governed by the Federal Arbitration Act." (Doc. 7-1 at 2). *See Myers*, 2022 WL 1569080, at *5 (finding that "the FAA governs in this case because the parties specifically agreed that it would").

### 2. *Unconscionability*

Plaintiff's other main argument for this Court to set aside the arbitration agreement is that the agreement is both procedurally and substantively unconscionable. (Doc. 16 at 2). Plaintiff argues that it is procedurally unconscionable because it was "presented without the opportunity for negotiation, characterizing it as an adhesion contact," and it is substantively unconscionable because the "terms imposed by the arbitration agreement place disproportionate burdens on the employee." (*Id.*).

"A contract, including an arbitration agreement, that is unconscionable is unenforceable." *Barnett v. V.T. Motors LLC*, 2021 WL 5759113, at *3 (D. Ariz. Dec. 3, 2021). Under Arizona law, "[p]rocedural unconscionability addresses the fairness of the bargaining process, which is concerned with unfair surprise, fine print clauses, mistakes or

ignorance of important facts or other things that mean bargaining did not proceed as it should." *Clark v. Renaissance West, L.L.C.*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013) (internal quotations and citation omitted). "Nothing in applicable Arizona law requires a drafter to explain the provisions of standardized contracts, nor does the post-hoc regret of a party to such a contract suffice to demonstrate unconscionability." *Rizzio v. Surpass Senior Living LLC*, 459 P.3d 1201, 1206 (Ariz. Ct. App. 2020). The mere fact that Plaintiff's assent to the arbitration agreement was a condition of his employment "does not suffice to establish procedural unconscionability." *De Jesus v. UnitedHealth Grp., Inc.*, 2024 WL 4601583, at *2 (9th Cir. Oct. 29, 2024).

In assessing procedural unconscionability, courts consider "whether the contract was separate from other paperwork, whether the contract used conspicuous typeface, and whether the contract was signed hurriedly and without explanation in emergency circumstances." *Duenas v. Life Care Centers of Am., Inc*., 336 P.3d 763, 768 (Ariz. Ct. App. 2014) (internal citations omitted). Here, as Greystar has pointed out, Plaintiff has not argued "that he was unaware of the Agreement, that he did not understand the terms, that he did not have the opportunity to inquire about its meaning, or that Greystar attempted to hide certain terms." (Doc. 17 at 5). The agreement, which Plaintiff signed, is set forth in clear language with conspicuous headings and key provisions bolded or underlined. (Doc. 7-1). *See Perry v. NorthCentral Univ., Inc.*, 2011 WL 4356499, at *5 (D. Ariz. Sept. 19, 2011) (concluding as a matter of law that arbitration provisions were not procedurally unconscionable where they were located in plain sight and written in easily understood language, and where the plaintiff clearly had both the capacity and the opportunity to review the provisions). Plaintiff has therefore provided this Court with no reason to believe that the agreement was procedurally unconscionable as a matter of law.

Plaintiff also argues in passing that the "terms imposed by the arbitration agreement place disproportionate burdens on the employee, indicative of substantive unconscionability." (Doc. 16 at 2). "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed.

5

Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 58 (Ariz. 1995) (citation omitted). Greystar correctly notes that "Plaintiff does not present any facts showing that the Agreement was substantively unconscionable," as he "alleges no unfair contract terms or an imbalance of rights." (Doc. 17 at 6). Reviewing the terms of the arbitration agreement, the Court notes that the agreement burdens *both* parties with the requirement to arbitrate claims (Doc. 7-1 at 2); that it does not prohibit Plaintiff from pursuing any administrative claims he is entitled to (*Id.* at 3); that it entitles both parties to conduct discovery to the extent available in federal court (*Id.* at 5); that it entitles both parties to all types of relief otherwise available in court (*Id.*); and that any fees or expenses "in excess of those that [Plaintiff] would have been required to pay if the matter was in court," as well as any travel or lodging costs charged by the arbitrator, are to be paid by Greystar (*Id.* at 5, 7). The Court therefore finds that the agreement fairly balances the obligations and rights of both parties and does not impose any significant cost-price disparity. As a matter of law, Plaintiff cannot establish that this arbitration agreement is substantively unconscionable.

### 3. Public Policy

Finally, Plaintiff cannot establish that the arbitration agreement is unenforceable as a matter of public policy. Plaintiff argues that "statutory rights, especially those related to discrimination and retaliation, are of public concern and should not be arbitrarily subjected to private arbitration," citing to the Supreme Court's decision in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974). (Doc. 16 at 3). However, as Greystar rightly points out, this case has been superseded by more recent precedent favoring the enforcement of arbitration provisions. (Doc. 17 at 7). *See, e.g.*, *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context."). As such, Plaintiff's policy argument must fail.

**B. Dismissal**

"When neither party requests a stay in the event a motion to compel arbitration is granted and all claims are subject to arbitration, a court has discretion to dismiss the action." *Barnett*, 2021 WL 5759113, at *6; *cf. Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, *and a party requests a stay pending arbitration*, § 3 of the FAA compels the court to stay the proceeding.") (emphasis added). Greystar requests that this Court "dismiss Plaintiff's lawsuit and compel Plaintiff to pursue his claims through arbitration under the terms and conditions of the Agreement." (Doc. 17 at 8). The arbitration agreement here is broad enough to cover all of Plaintiffs claims against Greystar. *See Hopkins & Carley, ALC v. Thomson Elite*, 2011 WL 1327359, at *7–8 (N.D. Cal. Apr. 6, 2011) ("Where an arbitration clause is broad enough to cover all of a plaintiff's claims, the court may compel arbitration and dismiss the action."). Accordingly, the Court concludes that dismissal is appropriate here.

While Plaintiff urges this Court to promptly resolve his complaint on the merits (Doc. 11 at 5), this Court is not at liberty to adjudicate Plaintiff's claims, whether meritorious or not. For better or for worse, Plaintiff signed an agreement to arbitrate, and that agreement is valid and enforceable. (Doc. 7-1 at 8). This Court may not contravene established contract law merely because Plaintiff insists that federal court is now his preferred venue for resolving such disputes. (Doc. 9 at 3).

**IT IS THEREFORE ORDERED** that Defendant Greystar Management Services, LLC's Motion to Dismiss and Compel Arbitration (Doc. 7) is **granted**.

**IT IS FURTHER ORDERED** that this case is **dismissed without prejudice**. The Clerk of Court shall terminate this action accordingly.

Dated this 14th day of November, 2024.

Honorable Steven P. Logan
United States District Judge